IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

```
JOHN T. MYERS,                    )
                                  )   2:12-cv-00497-GEB-GGH
          Plaintiff,              )
                                  )
     v.                           )   ORDER GRANTING IN PART AND
                                  )   DENYING IN PART DEFENDANT'S
CALIFORNIA DEPARTMENT OF          )   DISMISSAL MOTION
REHABILITATION, and DOES 1-20,    )
                                  )
          Defendants.             )
_____  )
```

Defendant California Department of Rehabilitation ("CDOR") moves for dismissal of all of Plaintiff John T. Myers's ("Myers") claims in his complaint. The motion is brought under Federal Rule of Civil Procedure ("Rule") 12(b)(6). Myers opposes the motion.

## I. BACKGROUND

Myers's claims concern CDOR's Business Enterprise Program for the Blind ("BEP"). Myers alleges CDOR "is a public entity and an agency of the State of California[,] . . . which operates, maintains, governs, and administers the BEP[.]" (Compl. ¶ 8.) Myers alleges the BEP "was developed by CDOR to train blind persons to operate privately owned food facilities in federal and state buildings, including cafeterias, food stands and vending machines." Id. ¶ 1.

Myers alleges he "is totally blind as the result of a motor vehicle accident." Id. ¶ 2. Myers alleges he "was accepted into the BEP, and the training course commenced on or around October 11, 2010." Id.

Myers alleges he "was the only totally blind person among the five students in the BEP" training course. Id. Myers alleges that during the training course, CDOR "provid[ed] him with an inadequate, 'makeshift' audio CD of course materials, whereas the other students were able to make use of the text, pictures and charts in [the] materials." Id. ¶ 3(a). Myers alleges he "questioned the BEP instructor prior to his first exam as to the inadequacy of the audio CD, only to be rebuffed[.]" Id. ¶ 3(b). Myers alleges that "[a]s a result of the inadequate audio CD, . . . [he] failed the first exam." Id. ¶ 3(c).

Myers alleges he "was subsequently provided materials on a CD scanned with" a program that converts images to text. Id. ¶ 3(d). Myers alleges, however, that the materials were inadequate, because the CD "made reference to [math] formulas which were not provided" and "[t]he tables and charts were copied in vertical columns on the CD instead of horizontally, making it virtually impossible to compare the information in columnar fashion[, which] was available to the other students." Id. ¶ 3(d)-(e). Myers alleges he brought "[t]his issue . . . to the attention of the BEP instructor, but [it] went unresolved." Id. ¶ 3(e).

Myers also alleges "[t]he BEP instructor . . . lecture[d] rapidly, stating long series of numbers to the students to prepare draft monthly operating reports ('MOR')." Id. ¶ 3(f). Myers alleges "[t]he non-blind students were able to note the numbers on the MOR, but [Myers] was unable to keep up[, since] his Excel spreadsheet takes more time to jump[] from line to line." Id. Myers alleges he "made repeated requests to the instructor that the numbers be repeated, but the instructor became impatient and unresponsive." Id. Myers alleges it was "impossible to complete the MOR assignment[,]" "[g]iven the speed at which the instructor was stating the numbers." Id.

1    Myers alleges the "BEP instructor also made use of visual
2 displays to illustrate math problems[, but] there was little, if any[,]
3 explanation of what was written on the displays." Id. ¶ 3(g). Myers
4 further alleges that "[d]uring On-The-Job Training (OJT), [he] was left
5 alone [on] at least two occasions while the other non-blind students
6 participated in the OJT exercises." Id. ¶ 3(h).

7    Myers alleges that "[d]uring one exam, [he] was provided three
8 different human readers[, which] caus[ed] disruption in the test taking
9 process." Id. ¶ 3(i). Myers alleges "[o]ther readers assigned to [him]
10 had no interest in being there, and expressed annoyance at [him] when he
11 would ask them to repeat questions or sets of potential answers." Id.
12 Myers alleges that "[d]uring the midterm exam, the reader assigned to
13 [him] failed to return after lunch, and [Myers] was required to continue
14 the exam the next day with a different reader." Id. ¶ 3(j). Myers
15 alleges that "the first reader made mistakes . . . inputting numbers on
16 the MOR, resulting in [Myers] being unable to complete that portion of
17 the exam." Id. Myers alleges the "BEP instructor refused to allow [him]
18 additional time to finish the exam." Id. Myers further alleges he "was
19 dismissed from the BEP [on January 3, 2011] due to 'low test scores on
20 a mid-term exam' and a purported concern over his lack of mobility." Id.
21 ¶ 4.

22    Myers alleges he was denied "full and equal access" to the BEP
23 "based solely on his blindness." Id. ¶ 9. Myers alleges CDOR
24 discriminated against him based on his disability in violation of the
25 following statutes: the California Unruh Civil Rights Act ("Unruh Act"),
26 Cal. Civ. Code § 51; the California Disabled Persons Act ("CDPA"), Cal.
27 Civ. Code § 54; California Government Code section 11135 ("section
28 11135"); Title II of the Americans With Disabilities Act ("ADA"), 42

3

U.S.C. § 12132; and Section 504 of the Rehabilitation Act ("§ 504"), 29 U.S.C. § 794. Id. ¶¶ 9-44. Myers seeks declaratory relief, an injunction ordering CDOR to comply with the aforementioned statutes, statutory damages, and attorneys' fees and costs. Id. ¶¶ A-F.

## II. LEGAL STANDARD

Decision on CDOR's Rule 12(b)(6) dismissal motion requires determination of "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1054 (9th Cir. 2011) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

When determining the sufficiency of a claim, "[w]e accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party[; however, this tenet does not apply to] . . . legal conclusions . . . cast in the form of factual allegations." Fayer v. Vaughn, 649 F.3d 1061, 1064 (9th Cir. 2011) (citation and internal quotation marks omitted). "Therefore, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." Id. (citation and internal quotation marks omitted); see also Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555) (stating "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do'").

//
//

4

## III. DISCUSSION

**A. State Law Claims**

CDOR seeks dismissal of Myers' Unruh Act, CDPA, and section 11135 claims, arguing they "are barred by . . . Eleventh Amendment [sovereign immunity]." (Def.'s Mot. ("Mot.") 5:25-26.) "Absent a state's unequivocal consent, the Eleventh Amendment bars a federal court from entertaining a suit against that state, or one of its agencies or departments, based on state law." Hall v. State of Hawaii, 791 F.2d 759, 761 (9th Cir. 1986) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99-100 (1984)). "This jurisdictional bar applies regardless of the nature of relief sought." Pennhurst State Sch., 465 U.S. at 100-01 (citing Missouri v. Fiske, 290 U.S. 18, 27 (1933)).

Myers argues his state law claims "are not subject to dismissal on [Eleventh] Amendment grounds[,]" since it is inapplicable to the prospective injunctive relief he seeks. (Pl.'s Opp'n ("Opp'n") 2:13-22.) However, this argument is unavailing, since Myers alleges CDOR is an agency of the State of California, and the Eleventh Amendment's "jurisdictional bar applies [to suits against states and their agencies] regardless of the nature of relief sought." Pennhurst State Sch., 465 U.S. at 100-01.

Myers also argues:

> Both the Unruh Civil Rights Act and the [CDPA] have been amended to provide that a violation of the federal ADA is a per se violation of these respective statutes. Cal. Civ. Code §§ 51(f), 54.1(d). While [Myers] has found no case law on this novel issue, it is reasonable to assume that California has consented to federal jurisdiction . . . by specifically making a violation of a federal statute a concomitant violation of state law.

(Opp'n 3:6-11.)

5

1          CDOR argues Myers "cannot demonstrate that [California] intended to waive [its] sovereign immunity and permit any of [Myers's] state law claims to proceed in federal court[, since t]he statutes at issue do not unequivocally express California's consent to suit in federal court." (Mot. 6:11-13.) CDOR also argues courts have already established that California did not consent to suit in federal court by enacting the Unruh Act or section 11135. Id. at 6:13-17 (citing Stanley v. Trs. of Cal. State Univ., 433 F.3d 1129, 1133-34 (9th Cir. 2006) (upholding dismissal of Unruh Act claims because "[t]he Act does not specifically consent to federal court actions"); and T.M. ex rel. Benson v. San Francisco Unified Sch. Dist., No. C 09-01463, 2010 WL 291828, at *3 (N.D. Cal. Jan. 19, 2010) (dismissing section 11135 claim against state agency on sovereign immunity grounds)).

"A State may waive its sovereign immunity by making a 'clear declaration' that it intends to submit itself to federal court jurisdiction." Douglas v. Cal. Dep't of Youth Auth., 285 F.3d 1226, 1228 (9th Cir. 2002) (internal quotation marks and citation omitted). "Because a State's decision to waive its immunity must be 'altogether voluntary,' the 'test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one' . . . [and] courts must indulge every reasonable presumption against waiver[.]" Id. (internal quotation marks and citation omitted). Myers fails to demonstrate that California made a "clear declaration" in the Unruh Act, CDPA, or section 11135 of an intent to waive its sovereign immunity concerning any of these statutes. Therefore, this portion of CDOR's dismissal motion is GRANTED.

//
//

**B. ADA and § 504 Claims**

CDOR argues that Myers fails to allege sufficient factual allegations to state actionable claims under the ADA and § 504. (Mot. 7:23-24.) To demonstrate a violation of the ADA, "a plaintiff must [allege, *inter alia*, facts supporting drawing a reasonable inference that] . . . he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity . . . *by reason of his disability*." Weinreich v. Los Angeles Cnty. Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997) (emphasis in original) (citing 42 U.S.C. § 12132). "Similarly, under [§ 504], a plaintiff must show[, *inter alia*,] . . . he was denied the benefits of the program *solely by reason of his disability*[.]" Id. (emphasis in original) (citing 29 U.S.C. § 794). "There is no significant difference in analysis of the rights and obligations created by the ADA and [§ 504]." Zukle v. Regents of Univ. of Cal., 166 F.3d 1041, 1045 n.11 (9th Cir. 1999).

CDOR argues Myers "fails to allege facts that support . . . finding that [CDOR] excluded him from [the BEP] solely because of his disability[,]" since his "complaint is based on the incorrect premise that the other students in the BEP class could see." (Mot. 7:23-25.) CDOR further argues:

> [T]he whole purpose of the BEP is to provide blind persons with remunerative employment. It provides extensive services to people who are blind to help ensure that the participants can successfully complete the program. Given the purpose and scope of the program, [Myers] cannot demonstrate that he was denied access to the program solely because he is blind.

Id. at 8:10-15 (internal citation omitted).

7

Myers counters that "[he] alleges that he was deprived of an equal opportunity to succeed in the BEP on the basis that the training materials were inadequate to accommodate his total blindness[.]" (Opp'n 4:11-15.) Myers argues "[CDOR's] approach fails to take into account the extent of [his] disability (total blindness) [versus] the four other students who [Myers] alleges had lesser disabilities and thus, were able to make use of the visual BEP materials[.]" Id. at 5:3-5. CDOR rejoins that "the facts in [Myers's] complaint do not support [his] argument [that he was treated differently than 'lesser-disabled' students]." (Def.'s Reply 3:17-19.)

However, Myers alleges in his complaint that he "was the only totally blind person among the five students in the BEP." (Compl. ¶ 3.) Myers also alleges specific facts supporting his allegation that he did not have the same access to BEP training course materials and tests as the other students because his disability was more severe than those of the other students. Id. Myers further alleges he was dismissed from the BEP because of his low test scores and "a purported concern over his lack of mobility." Id. ¶ 4. Myers allegations are sufficient to withstand this portion of the motion. Therefore, this portion of motion is DENIED.

### IV. CONCLUSION

For the stated reasons, CDOR's dismissal motion is granted in part and denied in part.

Dated:  August 13, 2012

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge